Richard A. COLE, M.D., Plaintiff,

v.

TRAVELERS INSURANCE
CO., et al., Defendants

No.  CIV.A. 300CV957CFD.

United States District Court,
D. Connecticut.

June 13, 2002.

Richard A. Cole, Newburyport, MA, Pro se.

Peter M. Nolin, Gary Scott Klein, Sandak Hennessey & Greco, Stamford, CT, R. Cornelius Danaher, Jr., Danaher, Tedford, Lagnese & Neal, Hartford, CT, Kay Kyungsun Yu, Morgan, Lewis & Bockius LLP, Philadelphia, PA, Vaughan Finn, Shipman & Goodwin, Hartford, CT, for Defendants.

## *RULING ON MOTIONS TO DISMISS*

DRONEY, District Judge.

On September 26, 2001, this Court granted the motions to dismiss the instant action by Erie Insurance Group Health Protection Plan ("Erie"), Maplevale Farms, Inc. Employee Benefit Plan ("Maplevale"), Cooperating Railway Labor Organizations Employee Benefit Plan ("CRLO"), NYNEX Medical Expense Plan ("NYNEX") and Travelers Insurance Company ("Travelers"). On October 1, 2001, the Court vacated that dismissal[1]

---

1. Accordingly, the plaintiff's motion for relief from judgment [Doc. # 47–1] is DENIED AS MOOT.

and entered an order that the parties submit memoranda regarding whether the plaintiff's failure to comply with the 120 day service requirement of Federal Rule of Civil Procedure 4(m) should be a basis for dismissing this action. In light of those memoranda, as well as the defendants' previous filings, the motions to dismiss by Erie, CRLO, and Maplevale [Documents # 5, 31] are GRANTED, and the motions to dismiss by Travelers and NYNEX [Documents # 7, 19, 23] are GRANTED IN PART and DENIED IN PART.

## I. Background

The plaintiff brings this action pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.*, claiming that the defendants failed to pay him for medical services that he rendered to plan beneficiaries in violation of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). He also claims that the defendants' actions constituted breach of contract, fraud, and unjust enrichment in violation of Connecticut law.

The plaintiff practiced medicine in Erie, Pennsylvania.[2] On December 21, 1992, the plaintiff's license to practice medicine was suspended, following his conviction in federal court in November 1992 for unlawful distribution of a controlled substance, mail fraud, and tax evasion[3]. Six years later—to the day—the plaintiff filed a *pro se*

action against Travelers and several employee benefit plans insured or administered by Travelers alleging similar claims to those alleged in the instant case.

The Court dismissed that action based on the plaintiff's failure to effect service of process as required by Federal Rule of Civil Procedure 4(h)(1). *See Cole v. Travelers Ins. Co.*, No. 3:98 CV 2480(CFD), 2000 WL 502689, at *1 (D.Conn. Mar. 15, 2000). The dismissal, however, was without prejudice to the plaintiff refiling the action within sixty days. *See id.* at *3. The plaintiff then filed this *pro se* action on May 23, 2000.[4] The plaintiff subsequently filed an amended complaint on August 3, 2000, dropping the defendant Turben Trucking Employee Benefit Plan and adding as a defendant, Cooperating Railway Labor Organizations Employee Benefit Plan. On October 4, 2001, the plaintiff submitted a motion for leave to file a second amended complaint [Doc.# 47–2], which the Court finds good cause to permit under *Parker v. Columbia Pictures Industries*, 204 F.3d 326, 340 (2d Cir.2000), and Fed.R.Civ.P. 16(b), and accordingly, is GRANTED.

According to the plaintiff's second amended complaint, he provided medical services for eight patients covered by the named employee benefit plans[5] and that each of the plans either purchased insurance from Travelers or used Travelers as an administrator for its plan. The patients and the plans under which they were alleg-

---

**2.** The plaintiff does not allege the specific time period in which he practiced medicine. However, it appears that he practiced in the 1980s and early 1990s, at least until December 1992.

**3.** The plaintiff does not dispute that his license was suspended on that date and has not alleged that his license was reinstated.

**4.** The plaintiff maintains that he attempted to file this action within the sixty day period for

refiling set forth in the Court's dismissal of March 15, 2000, but was not permitted to do so by the Clerk's Office. This opinion assumes that the plaintiff complied with the sixty day requirement and filed this action between March 15 and May 14, 2000.

**5.** The benefit plans are allegedly employee welfare benefit plans governed by ERISA *See* 29 U.S.C. § 1002.

edly covered are as follows: Mary Berarducci (Erie), Crystal Gould (Maplevale), Roberta Joanethis (Ten Pin Lanes), Lori Katta (N.Y.NEX), Marshall Mease (Great Lakes), Linda Soto (Erie), Antoinette Telega (Erie), and Donald Turben (CRLO).[6] Cole also contends that these patients assigned their rights to receive payment for the medical services to him, and that he submitted claims to the defendants for reimbursement for the medical services. However, he contends, the defendants never reimbursed him for the medical services that he provided.

Travelers, NYNEX, Erie, Maplevale, and CRLO have filed motions to dismiss. As noted earlier, on September 26, 2001, this Court granted the defendants' motions to dismiss, and on October 1, 2001, the Court vacated that dismissal.

## II. Motion to Dismiss Standard

When considering a Rule 12(b) motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Easton v. Sundram*, 947 F.2d 1011, 1014–15 (2d Cir.1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Frasier v.*

*Gen. Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir.1991). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D.Conn. 1990) (citing *Scheuer*, 416 U.S. at 232, 94 S.Ct. 1683). Thus, a motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994) (citations and internal quotation marks omitted), *cert. denied*, 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994).

In its review of a motion to dismiss, the Court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir.1993). "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice" to overcome a motion to dismiss. *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir.1996).

## III. Discussion

The defendants have moved to dismiss on the following grounds: (1) the plaintiff's ERISA claims are barred by the applicable statutes of limitation; (2) the plaintiff's state law claims are preempted by ERISA; (3) the plaintiff lacks standing to sue under

---

6. Ten Pin Lanes Inc. Employee Benefit Plan ("Ten Pin Lanes") and Great Lakes Elevator Services Inc. Employee Benefit Plan ("Great Lakes"), have failed to appear in this case. The plaintiff has also not returned executed summonses for these defendants. The plaintiff states in his memorandum in support of his October 4, 2001 motion that such defendants are "out of business and could not be served." As the plaintiff has not requested more time to serve such defendants, they are dismissed from the case. However, as the parties have not briefed the issue of whether a plaintiff may pursue a claim against a plan administrator when the plan is not a party to the case, the Court declines to reach that issue and assumes, for purposes of this opinion, that Cole may pursue his claims against Travelers with regard to the patients covered by Ten Pin Lanes and Great Lakes.

ERISA; (4) the plaintiff has failed to exhaust his administrative remedies; and (5) venue is improper in this district.

## A. Statutes of Limitation

With regard to their contention that Cole's ERISA claims are barred by the applicable statutes of limitation, the defendants contend that Cole submitted claims for reimbursement for the medical services he provided to the eight patients covered by the defendant plans, which were denied. They also contend that Cole failed to appeal those denials within the plans' procedures for doing so, or to commence this action challenging the denials within the applicable statutes of limitation.[7] In response, Cole claims that the defendants never administratively denied his claims for reimbursement and thus, that the statutes of limitation have not begun to run.

1. *Statute of Limitations for Section 502(a)(1)(B) Claims*

■ "As ERISA does not prescribe a limitations period for actions under § 1132, the controlling limitations period is that specified in the most nearly analogous state limitations statute." *Miles v. New York State Teamsters Conference Pension & Ret. Fund Employee Pension Benefit Plan,* 698 F.2d 593, 598 (2d Cir.1983). The state limitations statute most analogous to § 502(a)(1)(B) claims for wrongful denial of benefits is that for contract actions. *See id.* at 598 (applying New York's six-year statute of limitations for contract actions).

The defendants contend that Connecticut's six-year statute of limitations for contract actions applies because Cole chose to file this action in Connecticut.[8] *See* Conn. Gen.Stat. § 52–576.[9] Cole does not dispute the application of Connecticut's six-year statute of limitations. However, as indicated, he contends that the statute of limitations has not begun to run because the defendants never denied his requests for reimbursement.

An ERISA cause of action under § 502(a)(1)(B) accrues, and thus the statute of limitations begins to run, when an employee benefit plan clearly and unequivocally repudiates a beneficiary's claim for benefits under the plan. *See Carey v. International Brotherhood of Electrical Workers Local 363 Pension Plan,* 201 F.3d 44, 50 (2d Cir.1999). The beneficiary also must have actual or constructive notice of the repudiation of his or her claim. *See id.* at 48–49 n. 4. In addition, although a limitations period generally begins to run when an employee benefit plan denies a beneficiary's formal application for benefits, a repudiation may occur regardless of whether the beneficiary has filed a formal application for benefits. *See id.* at 47, 49.

ERISA regulations in place at the time of the events giving rise to this action further provided that a claim for benefits that has not been formally denied by an employee benefit plan within ninety days from the date of submission is deemed denied as a matter of law. *See* 29 C.F.R. § 2560.503–1(e)(1)–(3) (1993). In addition,

---

7. The defendants do not refer to any limitations periods in the employee welfare benefit plans, but rather, refer to state and ERISA statutes of limitation.

8. Defendant Erie also contends that because Cole provided medical services in Pennsylvania, that state's four-year statute of limitations applies in this case. The Court will assume for the purposes of this ruling, however, that

Connecticut's longer statute of limitations applies.

9. The statute provides, in relevant part: "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues ..." Conn. Gen. Stat. § 52–576(a).

the regulations provided that if a review of a denial is requested, the benefit plan must render a decision within sixty days or the claim is deemed denied on review. *See* 29 C.F.R. § 2560.503–1(h) (1993).[10]

In this case, as indicated, Cole has alleged that he provided medical services for eight patients covered by the defendant employee benefit plans. Cole has provided some documentation relating to his treatment of the eight patients. Exhibit Six to Cole's memorandum in support of his motion for relief from this Court's now-vacated September 26, 2001 ruling [Doc. # 48] contains several letters indicating Cole's "appeal" of the defendant plan administrators' denial of his claims with regard to the eight patients. Such documentation establishes that Cole's § 502(a)(1)(B) claims with regard to several of the patients are barred by the six-year statute of limitations.

The claims will be analyzed below by plan.

a. *Claims Against Erie*

As indicated, Cole has submitted to the Court letters dated June 28, 2001 that purport to be administrative "appeals" to the Erie plan administrator concerning claims Cole submitted for the treatment of Antoinette Telega, Mary Berarducci, and Linda Soto. With regard to Telega and Berarducci, the documentation submitted to the Erie plan administrator provides that Cole submitted the claims in 1990. Assuming that Cole submitted such claims on December 31, 1990 at the latest, and that, as Cole alleges, Erie never acted on the claims for payment, they were denied as a matter of law ninety days after he submitted them, on March 31, 1991. *See* 29 C.F.R. § 2560.503–1(e)(1)–(3) (1993). Further, assuming that Cole appealed

these denials, and that Erie never acted on or formally denied the appeals, the Court concludes that his § 502(a)(1)(B) claims with regard to his treatment of Telega and Berarducci accrued sixty days later, on May 31, 1991. *See* 29 C.F.R. § 2560.503–1(h) (1993). Therefore, applying Connecticut's six-year statute of limitations for contract actions, Cole had only until May 31, 1997 to bring his § 502(a)(1)(B) claims challenging the denial of his claims for the treatment of Telega and Berarducci.

With regard to patient Soto, Cole stated in the documentation provided to the Erie plan administrator: "In 1990 and 1991 I timely submitted a series of claims for Linda Soto." Assuming that Cole submitted such claims on December 31, 1991 at the latest, and that, as Cole alleges, Erie never acted on the claims for payment, they were denied as a matter of law ninety days after he submitted them, on March 31, 1992. *See* 29 C.F.R. § 2560.503–1(e)(1)–(3) (1993). Further, assuming that Cole appealed this denial, and that Erie never acted on or formally denied the appeal, the Court concludes that his § 502(a)(1)(B) claims accrued sixty days later, on May 31, 1992. *See* 29 C.F.R. § 2560.503–1(h) (1993). Therefore, applying Connecticut's six-year statute of limitations for contract actions, Cole had until May 31, 1998 to bring his § 502(a)(1)(B) claim challenging the denial of his claims for the treatment of Soto.

Accordingly, if Cole is deemed to have filed his § 502(a)(1)(B) claim on December 21, 1998, based on his filing of the complaint in the prior action, his § 502(a)(1)(B) claim against Erie with regard to each of these three patients is barred by the statute of limitations.

---

**10.** Congress amended these regulations recently. *See* 66 Fed.Reg. 35887 (July 9, 2001); 65 Fed.Reg. 70265 (Nov. 21, 2000). The guidelines for filing claims established in the defendants' benefit plans also appear consistent with these requirements.

#### b. *Claim Against CRLO*

Cole's claim for payment with regard to CRLO involves his treatment of Donald Turben. Cole stated in the documentation regarding Turben: "In 1990 I timely submitted a series of claims for Donald Turben." Assuming that Cole submitted such claims on December 31, 1990 at the latest, and that, as Cole alleges, CRLO never acted on the claims for payment, they are subject to the same analysis as the claims discussed above and Cole had only until May 31, 1997 to bring his § 502(a)(1)(B) claim challenging the denial of his claims for reimbursement for services provided to Turben. CRLO was not named as a defendant in the action filed on December 21, 1998, but was initially named as a defendant in Cole's first amended complaint, on August 3, 2000. Accordingly, Cole's § 502(a)(1)(B) claim against CRLO is also barred by the statute of limitations.

#### c. *Claims Against Maplevale*

Cole's claim for payment with regard to Maplevale involves his treatment of Crystal Gould. Cole states in the documentation provided to the Maplevale administrator: "In 1990 I timely submitted a series of claims for Crystal Gould." Assuming that Cole submitted such claims on December 31, 1990 at the latest, and that, as Cole alleges, Maplevale never acted on the claims for payment, they are subject to the same analysis as the claims discussed above. If Cole is deemed to have filed his § 502(a)(1)(B) claim on December 21, 1998, based on his filing of the complaint in the prior action, his § 502(a)(1)(B) claim against Maplevale is also barred by the statute of limitations.

#### d. *Claim Against NYNEX*

Cole's claim for payment with regard to NYNEX involves his treatment of Lori Katta. Cole stated in the documentation provided to the NYNEX plan administrator: "In 1992 I timely submitted a series

of claims for Lori Katta." Assuming then, that Cole submitted such claims on December 31, 1992 at the latest, and that, as Cole alleges, NYNEX never acted on the claims for payment, they were denied as a matter of law ninety days after he submitted them, on March 31, 1993. *See* 29 C.F.R. § 2560.503–1(e)(1)–(3) (1993). Further, assuming that Cole appealed this denial, and that NYNEX never acted on or formally denied the appeal, the Court concludes that his § 502(a)(1)(B) claims accrued sixty days later, on May 31, 1993. *See* 29 C.F.R. § 2560.503–1(h) (1993). Therefore, applying Connecticut's six-year statute of limitations for contract actions, Cole had until May 31, 1999 to bring his § 502(a)(1)(B) claim against NYNEX challenging the denial of his claims for the treatment to Katta. Based on Cole's filing of the complaint in the prior action on December 21, 1998, this claim is not time-barred.

#### e. *Claims Against Travelers*

Cole has also submitted to the Court letters dated June 28, 2001 that purport to be administrative "appeals" to the Travelers plan administrator with regard to claims Cole submitted for the treatment of Berarducci, Gould, Joneathis, Katta, Mease, Soto, Telega, and Turben. As Cole's "appeals" with regard to patients Berarducci, Gould, Soto, Telega, and Turben contain the same information on the claims for payment as those with regard to Erie, Maplevale, and CRLO, his § 502(a)(1)(B) claims with regard to such patients are barred by the statute of limitations as noted above.

With regard to patient Joanethis, an alleged participant in the Ten Pin Lanes plan, Cole stated in the documentation provided to the Travelers plan administrator: "In 1992 I timely submitted a series

of claims for Roberta Joanethis."[11] Assuming that Cole submitted such claims on December 31, 1992 at the latest, and that, as Cole alleges, Ten Pin Lanes and Travelers never acted on the claims for payment, they were denied as a matter of law ninety days after he submitted them, on March 31, 1993. *See* 29 C.F.R. § 2560.503–1(e)(1)–(3) (1993). Further, assuming that Cole appealed this denial, and that Ten Pin Lanes and Travelers never acted on or formally denied the appeal, the Court concludes that his § 502(a)(1)(B) claims accrued sixty days later, on May 31, 1993. *See* 29 C.F.R. § 2560.503–1(h) (1993). Therefore, applying Connecticut's six-year statute of limitations for contract actions, Cole had until May 31, 1999 to bring his § 502(a)(1)(B) claim against Travelers challenging the denial of his claims for the treatment of Joanethis.

With regard to patient Katta, an alleged participant in the NYNEX plan, Cole stated in the documentation provided to the Travelers plan administrator: "In 1990, 1991, and 1992 I timely submitted a series of claims for Lori Katta." Assuming then, that Cole submitted the 1992 claims on December 31, 1992 at the latest, and that, as Cole alleges, NYNEX and Travelers never acted on the claims for payment, they were denied as a matter of law ninety days after he submitted them, on March 31, 1993.[12] *See* 29 C.F.R. § 2560.503–1(e)(1)–(3) (1993). Further, assuming that Cole appealed this denial, and that NYNEX and Travelers never acted on or formally denied the appeal, the Court concludes that his § 502(a)(1)(B) claims accrued sixty days later, on May 31, 1993.

*See* 29 C.F.R. § 2560.503–1(h) (1993). Therefore, applying Connecticut's six-year statute of limitations for contract actions, the Court concludes that Cole had only until May 31, 1999 to bring his § 502(a)(1)(B) claim against Travelers challenging the denial of claims he submitted in 1992 for the treatment of Katta.

With regard to patient Mease, an alleged participant in the Great Lakes plan, Cole stated in the documentation provided to the Travelers plan administrator: "In 1991 I timely submitted a series of claims for Marshall Mease." Assuming that Cole submitted such claims on December 31, 1991 at the latest, and that, as Cole alleges, Great Lakes and Travelers never acted on the claims for payment, they were denied as a matter of law ninety days after he submitted them, on March 31, 1992. *See* 29 C.F.R. § 2560.503–1(e)(1)–(3) (1993). Further, assuming that Cole appealed this denial, and that Great Lakes and Travelers never acted on or formally denied the appeal, the Court concludes that his § 502(a)(1)(B) claims accrued sixty days later, on May 31, 1992. *See* 29 C.F.R. § 2560.503–1(h) (1993). Therefore, applying Connecticut's six-year statute of limitations for contract actions, Cole had only until May 31, 1998 to bring his § 502(a)(1)(B) claim against Travelers challenging the denial of his claims for the treatment of Mease.

Because Cole's initial complaint in this action was filed on December 21, 1998, his § 502(a)(1)(B) claim against Travelers with regard to patient Mease (in addition to those of Berarducci, Gould, Soto, Telega,

11. In the body of this document, Cole also refers to submitting these claims in 1990. As it is presently unclear whether this is a typographical error, the Court declines to dismiss Cole's claims with regard to Joanethis and assumes, for purposes of this opinion, that Cole submitted such claims only in 1992. However, this is without prejudice to this issue being addressed in a motion for summary judgment or at trial.

12. The claims for Cole's treatment of Katta submitted in 1990 and 1991 would be barred by the six-year statute of limitations as noted above.

and Turben as noted above) is barred by the statute of limitations. However, Cole's § 502(a)(1)(B) claims against Travelers with regard to claims he submitted in 1992 for his treatment of patients Joanethis and Katta are not barred on this basis.

### f. *Remaining Claims Against Travelers and NYNEX*

█ Accordingly, it appears that only Cole's § 502(a)(1)(B) claims with regard to claims he submitted in 1992 for his treatment of patients Joanethis and Katta, and thus with regard to defendants Travelers and NYNEX, withstand the bar of the statute of limitations, assuming Cole is deemed to have commenced this action on December 21, 1998. However, even assuming Cole commenced his prior action on that date by filing with the Court *see* Fed.R.Civ.P. 3; *see also West v. Conrail*, 481 U.S. 35, 39, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987) (holding that "when an underlying cause of action is based on federal law and the absence of an express federal statute of limitations makes it necessary to borrow a limitations period from another statute, the action is not barred if it has been commenced in compliance with Rule 3 within the borrowed period"); *DiVerniero v. Murphy*, 635 F.Supp. 1531 (D.Conn. 1986) (holding that, when courts borrow state limitations periods for section 1983 actions, they need not further borrow state rules on when the action is commenced, but rather, may follow Rule 3), the tolling of the statute "contemplates that service is effected within a reasonable time period after the filing of the complaint." *Novak v. National Broadcasting Company et al.*, 131 F.R.D. 44 (S.D.N.Y.1990); 1 James Wm. Moore et al., Moore's Federal Practice § 3.04[1] (3d ed.1999). Rule 4(m) provides that service must be made upon a defendant within 120 days after the filing of the complaint, or within a specified time

as directed by the Court. Fed.R.Civ.P. 4(m). Rule 4(m) states, in relevant part:

> Time Limit for Service. If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

As indicated in the Court's ruling on Cole's 1998 complaint, *see Cole*, 2000 WL 502689, at \*1, Cole did not properly serve the defendants within 120 days of the filing of his 1998 complaint. The Court dismissed the 1998 complaint, without prejudice to refiling the action within sixty days, with proper service to be effected. *See id.* at \*2. Cole filed his May 2000 complaint within sixty days of the Court's ruling on his 1998 complaint.[13] However, if the limitations periods on Cole's § 502(a)(1)(B) claims, though tolled by the filing of his 1998 complaint, began to run again when he did not serve the defendants within 120 days of the filing of that complaint, it appears that such limitations periods lapsed prior to the filing of his May 2000 complaint and thus, bar the re-filed complaint.

Courts have interpreted Rule 4(m) to allow a Court to extend the period for Rule 4(m) service "when the plaintiff can show good cause for the failure to serve within 120 days ... [or] if good cause is lacking, the court may extend the time, in its discretion." *Goodstein v. Bombardier Capital, Inc.*, 167 F.R.D. 662, 666 (D.Vt.1996); *see also Petrucelli v. Bohringer & Rat-*

---

**13.** *See supra* note 4.

*zinger,* 46 F.3d 1298, 1305 (3d Cir.1995) (discussing two-part inquiry). Several courts have held that a court may extend the time for Rule 4(m) service when the re-filed complaint would be barred by the statute of limitations. *See* Fed.R.Civ.P. 4(m), advisory committee notes (1993 amendment) *Fish v. Bread· Loaf Constr. Co.,* 133 F.3d 907 (unpublished opinion), 1998 WL 29640 at *2 (2d Cir.1998) (district court may, in its discretion, extend the 120 day period if statute of limitations would bar re-filed action); *Petrucelli,* 46 F.3d at 1305–06 (same); *Panaras v. Liquid Carbonic Indus. Corp.,* 94 F.3d 338, 341 (9th Cir.1996) (same); *Smith v. Commodore Cruise Line Ltd.,* 124 F.Supp.2d 150, 155 (S.D.N.Y.2000) (extending time because statute of limitations would bar re-filed action); *Vergis v. Grand Victoria Casino & Resort,* 199 F.R.D. 216, 218 (S.D.Ohio 2000) (same); *Goodstein,* 167 F.R.D. at 666–67 (same). In promulgating the amendments to Rule 4 of the Federal Rules of Civil Procedure in 1982, Congress contemplated that courts would be faced with this situation:

> Like proposed subsection (j), H.R. 7154 provides that a dismissal for failure to serve within 120 days shall be "without prejudice". Proposed subsection (j) was criticized by some for ambiguity because, it was argued, neither the text of subsection (j) nor the Advisory Committee Note indicated whether a dismissal without prejudice would toll a statute of limitation. See House Report 97–662, at 3–4 (1982). The problem would arise when a plaintiff files the complaint within the applicable statute of limitation period but does not effect service within 120 days. If the statute of limitation period expires during that period, and if the plaintiff's action is dismissed "without prejudice", can the plaintiff refile the complaint and maintain the action? The answer depends upon how the statute of limitation is tolled.

> If the law provides that the statute of limitation is tolled by filing and service of the complaint, then a dismissal under H.R. 7154 for failure to serve within the 120 days would, by the terms of the law controlling the tolling bar the plaintiff from later maintaining the cause of action. *If the law provides that the statute of limitation is tolled by filing alone, then the status of the plaintiff's cause of action turns upon the plaintiff's diligence.* If the plaintiff has not been diligent, the court will dismiss the complaint for failure to serve within 120 days, and the plaintiff will be barred from later maintaining the cause of action because the statute of limitation has run. A dismissal without prejudice does not confer upon the plaintiff any rights that the plaintiff does otherwise possess and leaves a plaintiff whose action has been dismissed in the same position as if the action had never been filed. If, on the other hand, the plaintiff has made reasonable efforts to effect service, then the plaintiff can move under Rule 6(b) to enlarge the time within which to serve or can oppose dismissal for failure to serve. A court would undoubtedly permit such a plaintiff additional time within which to effect service. Thus, a diligent plaintiff can preserve the cause of action. This result is consistent with the policy behind the time limit for service and with statutes of limitation, both of which are designed to encourage prompt movement of civil actions in the federal courts.

128 Cong. Rec. 9848, 9851 (1983) *reprinted in* Fed.R.Civ.P. 4 advisory committee's note, legislative statement (footnotes omitted, emphasis added).

Here, as noted above, the relevant limitations periods are tolled by filing of the complaint because the underlying cause of action is based on federal law. *See e.g., West,* 481 U.S. at 39, 107 S.Ct. 1538. Also

as noted above, it appears that Cole filed his 1998 complaint within the applicable limitations periods for some of his claims against Travelers and NYNEX, but did not effect proper service within 120 days. In the Court's dismissal of that complaint, however, the Court gave Cole sixty days to re-file his complaint. *See Cole,* 2000 WL 502689, at *2. The Court did not state that it found "good cause" to extend the time for service nor indicate the effect of the dismissal on the applicable limitations periods.

The Court finds, however, that good cause did exist to extend the time for service, indicated by Cole's reasonable efforts to effect service and lack of prejudice on the part of the defendants. *See Goodstein,* 167 F.R.D. at 665–66. As noted in the Court's ruling on the 1998 complaint, though Cole failed to serve Travelers' and NYNEX's officers or agents personally, or to include waiver of service forms with the copies of the summons and complaint, Cole did send copies of the summons and complaint to these defendants' agents via certified mail with return receipt requested. *See id.* at *2. An agent of each corporation signed a return receipt card acknowledging delivery of the summons and complaint. *See id.* As well, Cole was diligent in refiling his complaint within the sixty day period directed by the Court and effecting proper service in this new action.

The Court also finds that, in its discretion, the Court could have extended the time in light of Cole's *pro se* status and the fact that the re-filed complaint would be

barred by the statute of limitations. *See* Fed.R.Civ.P. 4(m), advisory committee notes (1993 amendment); *Smith,* 124 F.Supp.2d at 155 (extending time because statute of limitations would bar re-filed action); *Vergis,* 199 F.R.D. at 218 (same); *Goodstein,* 167 F.R.D. at 666–67 (same).

Accordingly, the Court properly extended the time for Rule 4(m) service, and thus, that the tolling of the statute of limitations by Cole's 1998 complaint was not negated by his failure to properly serve the defendants with that complaint.[14] The Court therefore declines to dismiss Cole's § 502(a)(1)(B) claims with regard to his treatment of Joneathis and Katta on the basis of Rule 4(m).

### 2. *Statute of Limitations for Section 502(a)(3) Claims*

■ Unlike § 502(a)(1)(B) claims, ERISA has provided a statute of limitations for § 502(a)(3) claims for breach of fiduciary duty. *See* 29 U.S.C. § 1113(2); *see also Katsaros v. Cody,* 744 F.2d 270, 280 (2d Cir.1984). These claims must be brought no more than three years after the earliest date "on which the plaintiff had actual knowledge of the breach or violation." *Id.* Since the plaintiff filed his § 502(a)(3) claims on December 21, 1998, upon the filing of the original complaint in this action, these claims would be time-barred if he had actual knowledge of the breach or violation earlier than December 21, 1995.[15]

---

**14.** To the extent the Court's previous ruling did not properly enlarge the time for service and the Court must do so now (and enlarge the 120 day period to effectuate proper service from the date Cole filed his 1998 complaint up to the date he effectuated service, so that the limitations periods will have been tolled as of the filing of Cole's 1998 complaint), the Court does so for the reasons described above.

**15.** With regard to defendant CRLO, as it was first named on August 3, 2000 upon the filing of Cole's first amended complaint, Cole's § 502(a)(3) claim against CRLO would be time-barred if he had actual knowledge of the breach or violation earlier than August 3, 1997.

A plaintiff has "actual knowledge of the breach or violation" when he has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act. *Caputo v. Pfizer*, 267 F.3d 181, 193 (2d Cir.2001); *Maher v. Strachan Shipping Co.*, 68 F.3d 951, 954 (5th Cir. 1995); *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1177 (3d Cir.1992). According to this standard, the plaintiff need not know the relevant ERISA law to have 'actual knowledge.' *Caputo*, 267 F.3d at 193. Instead, he must have knowledge of all the material facts "necessary to constitute a claim." *Id.* The Second Circuit has warned that "the disclosure of a transaction that is not inherently a statutory breach of fiduciary duty ... cannot communicate the existence of an underlying breach." *Id.* (citing *Fink v. Nat'l Sav. & Trust Co.*, 772 F.2d 951, 957 (D.C.Cir. 1985)).

Here, the plaintiff rests his breach of fiduciary duty claim on the defendants' alleged failure to make prompt payments of claims submitted. As noted above, Cole had "constructive" knowledge that his claims for benefits were denied no later than ninety days after the filing of the claims and that any appeals for those denials were denied sixty days after the submission of such appeals. *See* 29 C.F.R. § 2560.503–1(e)(1)–(3) (1993); 29 C.F.R. § 2560.503–1(h) (1993). According to the documentation provided by Cole noted above, Cole's latest claim for benefits with regard to any of the eight patients was submitted in 1992; thus, he had "constructive" knowledge in 1993 that all of his claims, and any appeals he may have filed, were denied. Accordingly, as Cole had knowledge of a breach of fiduciary duty based on the defendants' failure to make prompt payments of claims before December 21, 1995 (and before August 3, 1997 with regard to defendant CRLO), all of his claims under § 502(a)(3) exceed the three-

year statute of limitations and are time-barred.

The Court will now address Travelers' and NYNEX's remaining challenges with regard to the claims the Court has not dismissed on the basis of being time-barred, namely Cole's § 502(a)(1)(B) claims with regard to claims he submitted in 1992 for his treatment of patients Joanethis and Katta, and Cole's state law causes of action.

## B. ERISA Preemption of State Law Claims

█ The defendants also assert that Cole's state law claims must be dismissed on the basis of ERISA preemption. Specifically, the defendants argue that "state law claims that challenge an insurer's claims evaluation process and denial of benefits under the terms of an employer welfare benefit plan, as well as the administration of an ERISA plan, relate to that plan and are preempted." ERISA provides: "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all [s]tate laws insofar as they may now or hereafter relate to any employee benefit plan ...." 29 U.S.C.A. § 1144(a). In *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Supreme Court stated: "the express preemption provisions of ERISA are deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Id.* at 45–46, 107 S.Ct. 1549 (quoting *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981)). The Second Circuit, in *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142 (2d Cir.1989), maintained that "[t]he words 'relate to' in section [1144(a) ] are to be interpreted broadly; ERISA does not preempt only state laws specifically de-

signed to affect employee benefit plans or dealing with the subject matters covered by ERISA—reporting, disclosure, fiduciary responsibility, and the like." *Id.* at 144. Not all laws that have an impact on ERISA plans are preempted, however. "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Surveying cases to determine which state laws "relate to" ERISA plans and which have only a "tenuous, remote, or peripheral" impact on ERISA plans, the Second Circuit in *Borges* determined that:

> laws that have been ruled preempted are those that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee. Those that have not been preempted are laws of general application—often traditional exercises of state power or regulatory authority—whose effect on ERISA plans is incidental.

*Id.* at 146. Accordingly, the Second Circuit held that "[w]hat triggers ERISA preemption is not just any indirect effect on administrative procedures but rather an effect on the primary administrative functions of benefit plans, such as determining an employee's eligibility for a benefit and the amount of that benefit." *Id.* at 146–147.

The second amended complaint sets forth causes of action for breach of contract, unjust enrichment, and fraud. The alleged conduct underlying each of these causes of action concerns the defendants' reimbursement of benefits for services Cole plaintiff provided to patients covered by the defendants' employee benefits plans. As noted in *Borges*, these causes of action are precisely of the type that Con-

gress sought to preempt with ERISA. *See Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146–147 (2d Cir.1989); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (holding that employee's common law causes of action of breach of contract, and fraud in the inducement were preempted by ERISA); *Cole v. Aetna*, 70 F.Supp.2d 106, 112–13 (D.Conn.1999) (dismissing breach of contract, unjust enrichment, fraud, CUTPA, and CUIPA claims in similar action). Therefore, Counts I, II, and III of Cole's complaint are preempted by ERISA.

## C. Standing Under ERISA

■ The defendants also argue that Cole, as a former health care provider, lacks standing to bring suit under ERISA. Cole responds that his patients have assigned their rights under ERISA to him. Cole has provided copies of authorizations signed by patients Joneathis and Katta for direct payment of "authorized medical benefits" to him for medical services rendered.

Generally, only participants and beneficiaries are entitled to file suit for benefits under ERISA. 29 U.S.C. § 1132(a)(1)(B) & (a)(3). ERISA defines "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). ERISA defines "participant" as "any employee or former employee ... who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7).

The Second Circuit has established a narrow exception to this rule for healthcare providers to whom a beneficiary has assigned his claim in exchange for health care. *See Simon v. Gen. Elec. Co.*, 263 F.3d 176 (2d Cir.2001) (quoting *I.V. Servs. of Am., Inc. v. Trustees of Am. Consulting*

*Eng'rs Council Ins. Trust Fund,* 136 F.3d 114, 117 n. 2 (2d Cir.1998)) (where a beneficiary of a plan assigned his insurance benefits under the plan to a health care provider); *Cole v. Aetna,* 70 F.Supp.2d at 117. Whether a written authorization for direct payment constitutes a valid assignment of benefits is an open question in this Circuit, as the Second Circuit's decisions on this issue did not involve such authorizations. *See Simon,* 263 F.3d at 178. Other circuits, however, have evaluated similar "assignments," and found them to be valid. *See Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272, 1277 (6th Cir.1991); *Kennedy v. Connecticut Gen. Life Ins. Co.,* 924 F.2d 698, 700 (7th Cir. 1991).

In a related case brought by Cole in this district, this Court concluded, with regard to similar documentation of "assignments" submitted by Cole, "[w]ithout deciding the specific issue of whether the authorizations for direct payment constitute valid assignments of benefits ... by asserting allegations of 'assignment to the [plaintiff] who provided the beneficiary with the health care of the beneficiaries' right to reimbursement for the cost of that care,' *Misic v. Bldg. Serv. Employees Health and Welfare,* 789 F.2d 1374, 1377 (9th Cir., 1986),

and thereby alleging a 'colorable claim to benefits,' *Kennedy v. Connecticut Gen. Life Ins. Co.,* 924 F.2d 698, 700 (7th Cir. 1991), the plaintiff has adequately alleged standing to sue under ERISA." *Cole v. Aetna,* 70 F.Supp.2d at 118. The Court finds the same with regard to the instant complaint, and thus, declines to grant the defendants' motions to dismiss on this basis.[16]

**D. Exhaustion of Administrative Remedies**

■ The defendants also argue that Cole's claims should be dismissed because he has failed to exhaust the administrative remedies contained in the benefit plans and ERISA. ERISA does not explicitly require an exhaustion of administrative remedies. The Second Circuit, however, has recognized a "firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." *Kennedy v. Empire Blue Cross and Blue Shield,* 989 F.2d 588, 594 (2d Cir.1993) (quoting *Alfarone v. Bernie Wolff Constr. Corp.,* 788 F.2d 76, 79 (2d Cir.1986)). Accordingly, several lower courts have considered the exhaustion of administrative remedies a "requirement" under ERISA before initi-

**16.** In ruling on a motion for summary judgment in *Cole v. Aetna,* 3:97CV2272 (DJS) (D.Conn. March 28, 2002) (slip op.), this Court found substantially similar "assignments" to be valid:

In this case, fifteen patients have signed documents that essentially assign their rights to receive insurance benefits to the plaintiff. Whatever the specific language employed, the essential nature of these documents certainly comports with the spirit of these prior courts' rulings. In ruling this way, this Court reaches a result that is in line with the purpose of ERISA—to enhance employees' health and welfare benefit coverage. *Misic,* 789 F.2d at 1377. A different ruling might force health care providers to wait until the patient sued the plan and then bring suit against the patient,

in order to recover payments. Because the patient, knowing that any recovery would only be passed on to the health care provider, would lack incentive to bring suit, the "result would be inequitable." *Protocare of Metropolitan N.Y., Inc. v. Mutual Ass'n Admin., Inc.,* 866 F.Supp. 757 (S.D.N.Y.1994) (quoting *Hermann Hosp. v. MEBA Med. & Benefits Plan,* 959 F.2d 569 (5th Cir.1992)). Moreover, if no such standing were provided, "providers would either have to rely on the beneficiary to maintain an ERISA suit, or they would have to sue the beneficiary. [This] would discourage providers from becoming assignees and possibly from helping beneficiaries who were unable to pay them 'up-front.' " *Hermann Hosp. v. MEBA Med. & Benefits Plan,* 845 F.2d 1286, 1289 n. 13 (5th Cir.1988).

ating a claim. *See, e.g., Cole v. Aetna,* 3:97CV2272 (DJS) (D.Conn. March 28, 2002); *Jonas v. New York State Soc. of Certified Public Accountants Ins. Plans,* 1992 WL 390291, at *3 (E.D.N.Y. Dec. 8, 1992). In order to exhaust his administrative remedies, a plaintiff is only required to exhaust those administrative appeals provided for in the relevant plan or policy. *Kennedy,* 989 F.2d at 594.

In some cases, a plaintiff is not required to exhaust his administrative remedies under the plan. The 'futility doctrine' frees a claimant from the exhaustion requirement if he makes a "clear and positive showing" that exhausting his administrative remedies would have been futile. *Kennedy,* 989 F.2d at 594; *Barnett v. I.B.M. Corp.,* 885 F.Supp. 581, 588 (S.D.N.Y.1995). A plaintiff invoking this doctrine has a heavy burden, however. It is not enough for the plaintiff to argue that a claim would have been denied. *Barnett,* 885 F.Supp. at 588–89. Instead, there must be a "clear and positive" indication of futility. *Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410 (6th Cir.1998). For example, the plaintiff must "show that it is certain that [his] claim will be denied on appeal," or that the plan made some affirmative failure that denied him full access to the administrative procedure. *Wilczynski v. Lumbermens Mut. Cas. Co.,* 93 F.3d 397 (7th Cir.1997). For example, a plan's failure to inform a claimant of his appeal right, refusal to respond to a request for review, or engagement in some other irregularity has established that a further review would have been futile. *Id.; see also Ludwig v. NYNEX,* 838 F.Supp. 769, 781–82 (S.D.N.Y.1993).

In their original memoranda in support of their motions to dismiss, the defendants argued that Cole had not alleged that he has pursued and exhausted the administrative remedies afforded to him by the plans. However, as noted above, the Court granted Cole's motion for leave to file a second amended complaint. The second amended complaint does allege that Cole he has pursued and exhausted his administrative remedies through "appeals" he sent to the plans and plan administrators. Accordingly, the Court declines to dismiss Cole's remaining claims on that basis.[17]

### E. Improper Venue

■ NYNEX, by joining the arguments set forth in the defendant Erie's motion to dismiss and supporting memoranda, also argues that Cole's complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(3) and 28 U.S.C. § 1406(a) as venue is improper in this district. Cole responds that "venue is proper since the administrator of each of the plans, namely Travelers, is found in this district. All of the Plan Administrators regardless of their disguise as separate entities are controlled and directed by the corporate giant, Travelers, whose home office is in Hartford, CT."

ERISA's venue provision authorizes an ERISA action in a federal judicial district where: (1) the plan is administered; (2) the breach took place; (3) a defendant resides; or (4) a defendant may be found. 29 U.S.C. § 1132(e)(2). As the Court finds that "a defendant," namely Travelers, a Connecticut company, either "resides" or "may be found" in Connecticut, the Court finds that venue is proper in this district and declines to dismiss the claims against NYNEX on this basis.

### IV. Conclusion

The motions to dismiss by Erie, CRLO, and Maplevale [Documents # 5, 31] are

---

**17.** The Court, however, expresses no opinion on the Cole's ability to prove the validity or timeliness of such "appeals," or whether exhaustion was futile, at summary judgment or trial.

GRANTED. The motions to dismiss by Travelers and NYNEX [Documents # 7, 19, 23] are GRANTED IN PART, and DENIED .IN PART. Those motions are GRANTED with regard to Counts I, II, and III of the plaintiff's complaint, as well as with regard to all claims regarding patients Berarducci, Gould, Mease, Soto, Telega, and Turben, and all claims under ERISA § 502(a)(3). Accordingly, only Cole's ERISA § 502(a)(1)(B) claims in Count IV of his second amended complaint, with regard to claims he submitted in 1992 for patients Joanethis and Katta, remain. The remaining defendants are NYNEX and Travelers.